UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE GARCIA, | : | 3:22-cv-1328 (SVN) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN DARREN CHEVALIER, | : | |
| *et al.*, | : | |
| *Defendants.* | : | April 18, 2023 |

## INITIAL REVIEW ORDER

Plaintiff Jose Garcia, an inmate housed at Cheshire Correctional Institution in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights complaint under 42 U.S.C. § 1983.[1]  Compl., ECF No. 1.  Plaintiff asserts violations of his rights under the United States Constitution while he was housed at Osborn Correctional Institution ("Osborn") against the following DOC employees: Captain Darren Chevalier; Lieutenants McLain and Clayton; Correction Officers Grant, Croke, Torres, Quinones, Garutti, Shires, Ware, John Doe 1, and John Doe 2; Registered Nurse Tiffany Dyke; Licensed Clinical Social Worker Melissa Winiarz; and Psychologist Heather Gaw.  *Id.* at 2–8.  Plaintiff has sued Defendants in their individual and official capacities for damages, declaratory, and injunctive relief.  *Id.* at 12.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity, officer, or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 266497, shows that Plaintiff was sentenced on September 18, 2014, and is now housed at Cheshire Correctional Institution. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=266497 (last visited April 18, 2023).

portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

## I.   FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide context to this initial review.  The facts set forth in the complaint, and summarized below, are presumed to be true for purposes of initial review.

Plaintiff complains that in April 2021, the DOC gave the inmates notice of high levels of arsenic in the Osborn water but failed to provide any alternate source of drinking water.  Plaintiff discussed this issue with several other inmates, and considered filing a lawsuit over the contaminated drinking water.

Before such a lawsuit was filed, in May 2021, water started to leak into Plaintiff's cell in Unit E from the shower above his cell. During a three-month period before the leak was repaired, Plaintiff experienced frequent asthmatic episodes due to the black mold in his cell.  All inmates in Plaintiff's housing unit were moved to Unit B in August 2021 so that repairs could be completed. After completion of this restoration, Plaintiff was sent back to his housing unit so that he, as a member of the facility's janitorial squad, could clean the entire unit.  Correctional staff refused to provide him with any protective gear to clean hazardous conditions in the unit.

On September 13, 2021, Defendant Clayton placed Plaintiff in handcuffs and escorted him to the Restricted Housing Unit ("RHU").  When Plaintiff asked why he was being taken to RHU, he was informed that contraband was found in Plaintiff's cell.  Plaintiff alleges that he was "set-

2

up" for filing grievances and complaints regarding prison conditions. When Plaintiff told Clayton that the contraband found in his cell was not his, Clayton responded that he should take it up with the disciplinary hearing investigator since "Plaintiff like[s] to complain so much."

Plaintiff has been diagnosed with severe mental health issues such as bipolar disorder and depression, which "prevent" Plaintiff from adjusting to or coping with isolated confinements in the prisoner setting. Due to these emotional and mental health conditions, when put in RHU, Plaintiff reacted by flooding his cell and part of the housing unit. Defendant Grant turned the water off in his cell, which stopped the flooding. Thereafter, Defendant Chevalier arrived at Plaintiff's cell to take him for placement in four-point restraints. After Plaintiff failed to comply with correctional staff orders, Chevalier called for mental health staff.

Defendant Winiarz asked Plaintiff if he would cooperate and come to the cell door to speak with her. Plaintiff was "too upset" and refused.

Although Plaintiff informed Defendant Chevalier that he is asthmatic, Chevalier stated that he would deploy a chemical agent if Plaintiff refused to cooperate. Before Plaintiff had an opportunity to comply, Chevalier sprayed him with a chemical agent, which caused Plaintiff to cough, sneeze, vomit, and gasp for air. Plaintiff went over to the toilet bowel to wash off the chemical agent, and Chevalier sprayed Plaintiff again based on his false claim that Plaintiff threw toilet water. Plaintiff claims he was sprayed multiple times by both Defendants McLain and Chevalier.

Plaintiff was then placed in handcuffs behind his back and leg irons with a tether chain connecting the handcuffs to the leg irons. Plaintiff also had a spit/safety veil placed over his head. Defendants Chevalier, McLain, Clayton, Grant, Torres, Garutti, and Quinones then escorted

Plaintiff to the shower for decontamination.

Plaintiff was placed in the shower with the safety veil still over his head for ten minutes, but the shower caused the chemical agent to seep down onto this chest, back and genital area. Plaintiff burned from the chemical agent due to improper decontamination and being given no new clothing.

Plaintiff was then escorted to the hospital room where Defendants Chevalier, McLain, Clayton, Grant, Torres, Garutti, and Quinones placed him in four-point restraints while he continued to experience severe burning pain from the chemical agent. Defendants did not permit Plaintiff to wash off or attend his scheduled legal visit with his attorney after he was released from restraints.

Plaintiff pleaded with Defendants Dyke, Clayton, Torres, Grant, Garutti, Quinones, Shires—both prior to his placement in four-point restraints and during the two hours of his four-point custody—to have the chemical agent washed off his body and to be provided with new clothing. They denied Plaintiff's requests for relief and made fun of him, although they were aware Plaintiff was suffering from the burning effects of the chemical agent. Plaintiff suffered extreme pain and agony from being strapped down to the hard bed in four-point restraints for two hours.

While Plaintiff was in four-point custody, he attempted to remove some of his contaminated clothing. At that point, he was attacked by Defendants Clayton, Shires, Ware, and John Does 1 and 2, causing him severe pain, agony, bruising, and injury. Defendants did not provide for Plaintiff to receive any medical treatment for his injuries sustained from the assault or report the assault.

4

After he was released from the restraints Plaintiff was finally allowed to clean off the chemical agent and provided with clean clothing. Plaintiff informed Defendant Dyke about the assault, but she denied that any assault took place and dismissed his assertions of pain and suffering.

On September 14, 2021, Plaintiff's head and chest were visibly bruised from the physical beating the previous day. Due to his mental illness and the mistreatment, Plaintiff started to have suicidal thoughts. He informed Defendants Dyke, Winiarz, and Gaw of his suicidal ideation but they reported that he was fine. That same day, Plaintiff attempted to commit suicide by swallowing three sharp metal objects. Plaintiff later had X-rays and was taken to his same segregation cell, but was not provided with any mental health evaluation.

From September 15 through September 28, 2021, Plaintiff explained to Defendants Dyke and Winiarz that he had severe abdominal pain and that his X-rays showed objects lodged in his abdomen. Neither Dyke nor Winiarz provided for Plaintiff to be seen by an outside specialist for follow-up care until September 24, 2021, when Plaintiff was sent to UConn Health Care Center for a CT scan and emergency surgery.

On September 28, 2021, he had surgery to remove the three objects from his abdomen. Plaintiff has a permanent scar on his body from the surgery and continues to suffer from severe mental and emotional injury. Plaintiff was not sent to be seen by any mental health staff member, despite that he had attempted suicide.

## II. PRELIMINARY MATTERS

The Court construes Plaintiff's complaint as raising claims of Eighth Amendment indifference to his conditions of confinement, medical indifference, and excessive force; First

Amendment retaliation; violation of his Sixth Amendment right to counsel; and deprivation of his constitutional right to court access. Before examining whether any of these claims can proceed past initial review, the Court considers the availability of the relief sought by Plaintiff and the capacities in which he has sued the various Defendants, as well as allegations related to the personal involvement of Defendants.

### A. Injunctive and Official Capacity Claims

First, as Plaintiff is no longer housed at Osborn, his requests for injunctive and declaratory relief against Defendants, who are all alleged to be Osborn employees, are moot. See *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

Second, any claims based on constitutional violations for money damages against Defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. See e.g., *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any Defendants for damages in their individual capacities.

### B. Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. See *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation

6

directly against the official without relying on a special test for supervisory liability").

Since Plaintiff has not alleged any facts implicating Defendant Croke in the events described in his complaint, all claims against Croke are dismissed.

### III.     EIGHTH AMENDMENT

As Plaintiff was a sentenced inmate at the time relevant to this action, his claims of deliberate indifference and excessive force are reviewed under the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017).

#### A.  Conditions of Confinement

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . ., such as deliberate indifference to inmate health or safety.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," with their severity being "evaluated in light of contemporary standards of decency."  *Id.*  (citations and quotations omitted).  As for the subjective prong of the inquiry, "[d]eliberate indifference ... means the official must 'know of and disregard an excessive risk to inmate health or safety; the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference.'"  *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020).

Plaintiff alleges several forms of unsanitary or unhealthy conditions of confinement: (1) he was allegedly informed in April 2021 that his water at Osborn was contaminated with arsenic, but he was not provided with any alternative drinking water; (2) he was housed in a cell with black mold and water leaking down from a shower in the cell above; and (3) he was required to clean mold and rubble in the housing unit without appropriate safety gear.

While these conditions could potentially be Eighth Amendment violations, Plaintiff has not set forth any facts connecting any particular Defendant sued in this case to these alleged violations. For instance, Plaintiff has alleged no facts reflecting that any named Defendant was aware of or personally involved in acting with deliberate indifference to these conditions. *See Tangreti,* 983 F.3d at 618–19 (a plaintiff must plead and prove that each defendant "had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it."). Thus, the Court must dismiss any Eighth Amendment claims based on the above unsanitary conditions.

B. Medical Needs

To state a claim for deliberate indifference to medical needs, Plaintiff must allege facts showing that both his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003). Subjectively, the defendant must have been "subjectively reckless" by denying the plaintiff medical care. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section

8

1983.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).   Nor does a disagreement over the treatment provided show deliberate indifference.  *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703).

1. *Exposure to Chemical Agent*

An inmate who suffers significant distress from exposure to a chemical agent may state a plausible Eighth Amendment claim.  *See Deegan v. Doe #1*, No. 3:19-CV-1356 (MPS), 2019 WL 5964816, at *5 (D. Conn. Nov. 13, 2019) (allegation of pain from chemical agent sufficient to constitute serious medical need on initial review).  For initial review purposes, Plaintiff's allegations are sufficient to permit his Eighth Amendment claims for damages to proceed against Defendants Chevalier, McLain, and Winiarz[2] for deliberate indifference to the harm caused by Plaintiff's exposure to a chemical agent and/or for their failure to intervene to prevent the Eighth Amendment violation.  *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (explaining that an officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that … any constitutional violation has been committed by a law enforcement official.").

2. *Failure to Decontaminate*

Plaintiff asserts that he continued to suffer the burning effects of the chemical agent exposure after he was improperly decontaminated and not permitted to wash off the chemical agent prior to being placed in four-point restraints by Defendants Chevalier, McLain, Clayton, Torres, Quinones, Grant, and Garutti.  In addition, Plaintiff indicates that Defendants Dyke, Clayton,

---

[2] It is not entirely clear from the complaint whether Defendant Winiarz was present when Plaintiff was sprayed with the chemical agent.  For purposes of initial review, because it is plausible that Defendant Winiarz remained present but failed to intervene in the alleged Eighth Amendment violation, the Court will allow this claim to proceed against Defendant Winiarz.

9

Shires, Torres, Grant, Garutti, and Quinones laughed at him when he requested relief from the chemical agent effects during his four-point restraint custody. For purposes of initial review, Plaintiff may proceed on his claims for damages against Defendants Chevalier, McLain, Clayton, Dyke, Shires, Torres, Grant, Garutti, and Quinones for their alleged indifference to Plaintiff's medical care for the effects of the chemical agent after his improper decontamination.

### 3. *Assault Injuries*

Plaintiff claims Defendants Clayton, Ware, Shires, and John Doe 1 and 2 failed to provide him with medical care after subjecting him to severe injury. He alleges that Defendant Dyke later dismissed his assertion of pain and suffering resulting from the correctional officers' attack. Although sparse, Plaintiff's allegations plausibly suggest that Defendants Clayton, Ware, Shires, John Doe 1 and 2, and Dyke acted with a conscious disregard to Plaintiff's medical needs after he was injured from an assault. The Court will permit Plaintiff to proceed on his Eighth Amendment claims against these defendants in their individual capacities for damages.

### 4. *Mental Health*

Plaintiff alleges that he suffered from mental health conditions, including bi-polar and depression disorders. The Eighth Amendment prohibits deliberate indifference to an inmate's serious mental health needs. *See Spavone*, 719 F.3d at 138. Plaintiff's allegations plausibly suggest that Defendants Chevalier, McLain, and Winiarz acted with deliberate indifference to Plaintiff's serious mental disorders by failing to call for further mental health review prior to subjecting him to severe disciplinary measures of multiple chemical agent exposures, high level restraints, and four-point custody. Plaintiff also plausibly alleges that Defendants Dyke, Winiarz, and Gaw acted with deliberate indifference to his mental health needs after they became aware of

his suicidal ideations, after which he swallowed foreign objects in an attempt to commit suicide. Thus, the Court will permit Plaintiff to proceed on his claims of Eighth Amendment deliberate indifference to mental health needs against Defendants Chevalier, McLain, Winiarz, Dyke, and Gaw in their individual capacities.

### 5. Objects Lodged in Abdomen

Plaintiff's allegations indicate that Defendants Dyke and Winiarz were aware that he was suffering from severe abdominal pain after he swallowed the metal objects, but that these Defendants failed to provide him with timely medical care until his condition required emergency surgery. These allegations suffice to state a plausible claim that Defendants Dyke and Winiarz acted with deliberate indifference to his serious medical needs. Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment claims for deliberate indifference to his serious need for medical treatment against Defendants Dyke and Winiarz in their individual capacities.

## C. Excessive Force

Plaintiff's complaint raises excessive force concerns based on the alleged use of a chemical agent, four-point restraints, and assault. In order to adequately allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

### 1. Chemical Agent

Correctional staff's use of a chemical agent on a "recalcitrant inmate" to force compliance

11

with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order. *See Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014) ("[T]he use of single burst of a chemical agent, which is not a dangerous quantity, is not an unacceptable means of controlling an unruly or disruptive inmate."). Construed most favorably to Plaintiff, however, the complaint's allegations suggest that the use of the chemical agent went beyond valid penological objectives and was done maliciously or sadistically. Thus, Plaintiff may proceed on Eighth Amendment excessive force and/or failure to intervene claims for damages against Defendants Chevalier, McLain, and Winiarz based on the chemical agent deployment.

2. *Restraints/Four-Point Custody*

The use of restraints does not violate the Eighth Amendment unless it lacks penological justification, is grossly disproportionate to the situation, or involves the unnecessary and wanton infliction of pain. *See Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011). Plaintiff's allegations suggest that Defendants applied a harsh use of four-point restraints that was grossly disproportionate, under the circumstances, to the situation. In addition, Plaintiff alleges that he endured unnecessary suffering from being placed on four-point restraints for two hours while still suffering the effects of a chemical agent. Thus, the Court permits Plaintiff to proceed on Eighth Amendment excessive force and/or failure to intervene claims based on the use of four-point restraints against Defendants Chevalier, McLain, Clayton, Dyke, Grant, Torres, Garutti, and Quinones in their individual capacities.

   3. *Assault*

Plaintiff alleges that he was attacked and severely injured by Defendants Clayton, Ware, Shires, and John Does 1 and 2. Plaintiff may proceed on this Eighth Amendment excessive force claims against these Defendants in their individual capacities.

IV.   **FIRST AMENDMENT RETALIATION**

Plaintiff claims that he was falsely "set up" and accused of having unauthorized prescription pills in his cell as retaliation for his prior filings of grievances and other complaints about prison conditions. To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted). "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020).

For initial review purposes, Plaintiff has sufficiently alleged that Defendant Clayton was aware of Plaintiff's protected activity and subjected him to adverse action. Plaintiff's complaint does not suggest that any other Defendant was aware of his protected conduct and acted with

13

retaliatory subjecting him to adverse action. Accordingly, Plaintiff may proceed on his First Amendment retaliation claim only as to Defendant Clayton in his individual capacity.

## V. SIXTH AMENDMENT

Plaintiff alleges that Defendants did not permit him to attend his scheduled legal visit with his attorney after he was released from his restraints. The Sixth Amendment right to effective assistance of counsel "only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." *Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555-57 (1987)). Plaintiff has not alleged that he was prevented from meeting with his attorney in connection with his criminal case or first appeal. Accordingly, to the extent Plaintiff attempts to allege a Sixth Amendment claim, it will be dismissed.

## VI. ACCESS TO THE COURTS

The First Amendment to the United States Constitution guarantees prisoners of "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). A plausible court access claim requires a showing of "actual injury." *Id.* at 351–52. Thus, Plaintiff was required to allege facts that reflect Defendants' conduct "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 345 (N.D.N.Y. 2010). Plaintiff's complaint that he was denied the ability to meet with his attorney fails to plead any such facts. Accordingly, the Court dismisses any claim of deprivation of his right to court access as not plausible.

14

VII.   CONCLUSION

   For the foregoing reasons, the court enters the following orders:

The case shall proceed on Plaintiff's individual capacity claims for damages for:

(1)   Eighth Amendment violation against Defendants Chevalier and McLain based on deliberate indifference to Plaintiff's health condition for use of a chemical agent;

(2)   Eighth Amendment violation against Defendant Winiarz for failure to intervene and prevent the use of a chemical agent;

(3)   Eighth Amendment violation against Defendants Chevalier, McLain, Clayton, Dyke, Shires, Torres, Grant, Garutti, and Quinones based on deliberate indifference to Plaintiff's health for failing to adequately decontaminate Plaintiff after the use of a chemical agent;

(4)   Eighth Amendment violation against Defendants Clayton, Ware, Shires, John Doe 1 and 2, and Dyke based on deliberate indifference to Plaintiff's health for failing to adequately attend to Plaintiff's medical needs after he was assaulted;

(5)   Eighth Amendment violation against Defendants Chevalier, McLain, Winiarz, Dyke and Gaw based on deliberate indifference to Plaintiff's mental health needs;

(6)   Eighth Amendment violation against Defendants Dyke and Winiarz based on deliberate indifference to Plaintiff's health for failing to adequately provide treatment to Plaintiff after he swallowed several metal objects;

(7)   Eighth Amendment excessive force claim against Defendants Chevalier, McLain, and Winiarz based on unnecessary use of a chemical agent;

(8)   Eighth Amendment excessive force claim against Defendants Chevalier, McLain, Clayton, Dyke, Grant, Torres, Garutti, and Quinones based on unnecessary use of four points

15

restraints;

(9)    Eighth Amendment excessive force claim against Defendants Clayton, Ware, Shires, and John Does 1 and 2 based on alleged assault; and

(10)    First Amendment retaliation claim against Defendant Clayton.

Plaintiff's official capacity claims and claims for injunctive relief are DISMISSED. All other claims are DISMISSED.   Defendant Croke is DISMISSED from this action.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed on the claims set forth in items one through ten immediately above, he may do so without further delay.   If Plaintiff selects this option, he shall file a notice on the docket on or before May 18, 2023, informing the Court that he elects to proceed with service as to the claims set forth above.   The Court will then begin the effort to serve process on Defendants in their individual capacities.   The Court will issue a scheduling order upon appearance of all Defendants.   The Clerk cannot serve the complaint on Officers Doe 1 and 2 because Plaintiff has not provided the first or last names of the Doe defendants.   Plaintiff has **ninety (90) days** from the date of this order, or July 17, 2023, to conduct discovery and file a notice identifying the Doe Defendants by his or her first and last name. The Court will dismiss the claims against any Doe defendant for whom Plaintiff fails to provide a first and last name within the time specified.   *See* Fed. R. Civ. P. 4(m).

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his amended complaint that have been dismissed, in order to attempt to state a viable claim, he may file an amended complaint by May 18, 2023.  **An Amended Complaint, if filed, will**

**completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.** The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an Amended Complaint, the complaint this IRO addresses will **not** proceed to service of process on any Defendant.

If the Court receives no response from Plaintiff by May 18, 2023, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

**SO ORDERED** at Hartford, Connecticut, this 18 day of April, 2023.

                                                 */s/ Sarala V. Nagala*
                                                SARALA V. NAGALA
                                                UNITED STATES DISTRICT JUDGE