## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE GARCIA,                  :
*Plaintiff*,         :
                          :
v.                       :      3:22-cv-1328 (SVN)
                          :
STATE OF CONNECTICUT DEPT.   :
OF CORRECTIONS, *et al.*,     :
*Defendants*.       :

## INITIAL REVIEW OF AMENDED COMPLAINT

On October 13, 2022, Plaintiff Jose Garcia, an inmate housed at Corrigan-Radgowski Correctional Center in the custody of the Connecticut Department of Correction ("DOC"),[1] filed a civil rights complaint under 42 U.S.C. § 1983 in this action.  Compl., ECF No. 1.  Plaintiff asserted violation of his rights under the United States Constitution while he was housed at DOC's Osborn Correctional Institution ("Osborn") against the following employees:  Captain Darren Chevalier; Lieutenants McLain and Clayton; Correction Officers Grant, Croke, Torres, Quinones, Garutti, Shires, Ware, John Doe 1, and John Doe 2; Registered Nurse ("RN") Tiffany Dyke; Licensed Clinical Social Worker ("LCSW") Melissa Winiarz; and Psychologist Heather Gaw.  *Id.* at 2–8.

After an initial review, the Court concluded that Plaintiff had alleged the following plausible claims:  (1) Eighth Amendment violation against Defendants Chevalier and McLain based on deliberate indifference to Plaintiff's health condition for use of a chemical agent; (2) Eighth Amendment violation against Defendant Winiarz for failure to intervene and prevent the

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 266497, shows that Plaintiff was sentenced on September 18, 2014. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=266497 (last visited November 16, 2023).

use of a chemical agent; (3) Eighth Amendment violation against Defendants Chevalier, McLain, Clayton, Dyke, Shires, Torres, Grant, Garutti, and Quinones based on deliberate indifference to Plaintiff's health for failing to adequately decontaminate Plaintiff after the use of a chemical agent; (4) Eighth Amendment violation against Defendants Clayton, Ware, Shires, John Doe 1 and 2, and Dyke based on deliberate indifference to Plaintiff's health for failing to adequately attend to Plaintiff's medical needs after he was assaulted; (5) Eighth Amendment violation against Defendants Chevalier, McLain, Winiarz, Dyke and Gaw based on deliberate indifference to Plaintiff's mental health needs; (6) Eighth Amendment violation against Defendants Dyke and Winiarz based on deliberate indifference to Plaintiff's health for failing to adequately provide treatment to Plaintiff after he swallowed several metal objects; (7) Eighth Amendment excessive force claim against Defendants Chevalier, McLain, and Winiarz based on unnecessary use of a chemical agent; (8) Eighth Amendment excessive force claim against Defendants Chevalier, McLain, Clayton, Dyke, Grant, Torres, Garutti, and Quinones based on unnecessary use of four-point restraints; (9) Eighth Amendment excessive force claim against Defendants Clayton, Ware, Shires, and John Does 1 and 2 based on alleged assault; and (10) First Amendment retaliation claim against Defendant Clayton.   Initial Review Order ("IRO"), ECF No. 13 at 15–16.

The Court informed Plaintiff that he could proceed on these claims or file an amended complaint in order to correct the deficiencies of his any claims that the Court had determined were not plausibly alleged.  *Id.* at 16–17.

Plaintiff elected to file an amended complaint against the following defendants:   State of Connecticut DOC; Captains Chevelier[2]  and McClain; Lieutenants Clayton, Schold and Schachun;

---

[2] Plaintiff refers to this Defendant in the complaint as Captain Chevalier.

Correction Officers Grant, Croke, Torres, Quinones, Garutti, Shires, Stygall, Ware, Conteras, Ocasio, Floodquist, Doe 1 and Doe 2; Nurse Tiffany Dyke; Social Worker Melissa Winiarz; and Psychologist Heather Gaw.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).   Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).   The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

## I.    BACKGROUND

The Court does not include herein all of the allegations from the amended complaint but summarizes its facts to provide context to this initial review.

Plaintiff has been diagnosed with health issues such as asthma and bipolar disorder.   Am. Compl. at 16 ¶ 6.   Many of the relevant facts relate to Plaintiff's complaint that DOC exposed inmates to high levels of arsenic and other contaminants through the Osborn water system.

In May 2021, water started to leak into Plaintiff's cell from the shower above his cell.   *Id.* at 18 ¶ 11.   During the three-month period that the leak was not repaired, Plaintiff notified DOC staff, including Captain Perez, a non-party, about the need for repair.   *Id.* ¶ 12.   Plaintiff experienced frequent asthmatic and anxiety episodes due the black mold and unsanitary conditions in his cell.   *Id.* ¶ 14.   On an unknown date, Plaintiff was forced to stand in a shower within the

housing unit to determine what noxious substances were present in his cell.  *Id.* at 19 ¶ 17.   All inmates in Plaintiff's housing unit were moved to Unit B in August 2021 so that repairs could be completed.  *Id.* ¶ 19.   After completion of restoration, Plaintiff was sent back to his housing unit so that he could clean the entire unit of demolition debris.  *Id.* ¶ 21.   The black mold was not properly abated, and correctional staff refused to provide him with any protective gear to clean hazardous conditions in the unit.  *Id.* ¶ 22.   In August 2021, Plaintiff filed a level 1 grievance form.  *Id.* ¶ 16.

On September 13, 2021, Plaintiff was informed that he was assigned to clean and decontaminate Unit E, his original housing unit.  *Id.* at 20 ¶ 24.   While Plaintiff was working there, a correctional officer asked for his locker combination in Unit B, which Plaintiff provided.  *Id.* ¶ 27.   Plaintiff and the other inmates returned to Unit B later in the morning.  *Id.* ¶ 28.

After Plaintiff returned to Unit B, Lieutenant Clayton had a brief conversation with Lieutenant Stygall; Plaintiff had previously made an embarrassing comment about Stygall in front of Stygall's peers, causing Stygall to "foster[] a vendetta" against Plaintiff.  *Id.* at 21 ¶ 31. Clayton then placed Plaintiff in handcuffs for escort to the Restricted Housing Unit ("RHU") because Stygall had allegedly found contraband—"unprescribed medications/controlled substances"—in Plaintiff's cell in Unit B while Plaintiff was cleaning Unit E.  *Id.* at 20–21 ¶¶ 30–33.   Plaintiff was ignored when he explained that the pills were not his.  *Id.* at 20–21 ¶¶ 35, 37. Clayton responded that he should take it up with the disciplinary hearing investigator since "Plaintiff like[s] to complain so much."  *Id.* at 21–22 ¶ 37.

Plaintiff, responding to what he believed to be unfair treatment by DOC, flooded his own RHU cell and a portion of the housing unit.  *Id.* at 25 ¶ 51.   Correction Officer Grant turned the

water off in Plaintiff's cell, which stopped the flooding.  *Id.* ¶ 52.   Thereafter, Captain Chevalier arrived at Plaintiff's cell to take him for placement in four-point restraints as punishment for the flooding.  *Id.* at 26 ¶ 53.   Plaintiff apologized and pleaded for mercy from Chevalier and McClain, but Defendant Chevalier told him that he had to pay for his conduct.  *Id.* at 27 ¶ 60. After Plaintiff failed to comply with correctional staff orders, Chevalier called for mental health staff.  *Id.* at 28–29 ¶¶ 67, 69, 71.

Defendant LCSW Winiarz arrived and had a discussion with Defendant Chevalier.  *Id.* at 29 ¶ 72.   Plaintiff stated that he is asthmatic, but Captain Chevalier still stated that he would deploy a chemical agent if Plaintiff refused to cooperate.  *Id.* at 30–31 ¶¶ 78–81.   Before Plaintiff had an opportunity to comply, Captain Chevalier sprayed him with a chemical agent, which caused Plaintiff to cough, sneeze, vomit and gasp for air.  *Id.* at 31 ¶¶ 80, 83.   Plaintiff had to wash his face and neck by cupping water from the toilet because the water in his cell was still shut off.  *Id.* at ¶ 85.   Chevalier then sprayed Plaintiff again based on Chevalier's false claim that Plaintiff assaulted him with water.  *Id.* ¶¶ 85–86. Plaintiff claims he was sprayed multiple times by both Defendants McClain and Chevalier.  *Id.* at 31–32 ¶¶ 87–88.

Plaintiff was then "bum-rushed" by Defendants Chevalier, McClain, Clayton, Grant, Garutti, Quinones, and Torres.  *Id.* at 32 ¶ 88.   They placed him in shackles and handcuffs behind his back with a spit/safety veil placed over his head, and escorted him to the shower for decontamination.  *Id.* ¶¶ 89–90.

Defendant Grant forced Plaintiff's head under the water in the shower with the safety veil still over his head for ten minutes, making it difficult for Plaintiff to breathe, and the shower caused the chemical agent to seep down onto this chest, back and genital area.  *Id.* ¶ 91.   Still clothed in

wet, contaminated clothing, Plaintiff was placed in four-point restraints. *Id.* at 33 ¶ 95. Defendants Chevalier, McClain, Clayton, Grant, Garutti, Quinones, and Torres ridiculed Plaintiff while he suffered in four-point restraints. *Id.* ¶ 96.  Plaintiff's pleas for relief were also ignored by Defendants Nurse Dyke and Officer Shires. *Id.* ¶ 99.

While Plaintiff was in four-point custody, Plaintiff was able to wriggle his left hand free from restraint. *Id.* at 34 ¶ 103.  At that point, he was again "bum-rushed" by Defendants Clayton, Ware, Shires and John Does 1 and 2. *Id.* ¶ 104.  As a result of this beating, Plaintiff suffered severe pain, agony, and injury. *Id.* at 35 ¶ 108.

After he was released from the restraints, Plaintiff was finally allowed to clean off the chemical agent and was provided with clean clothing, but he was not provided with medical attention. *Id.* at 35 ¶ 109.  Plaintiff informed RN Dyke about the assault, but she denied that any assault took place and dismissed his assertions of pain and suffering. *Id.* at 35 – 36 ¶ 111.

On September 14, 2021, Plaintiff's head and chest were visibly bruised from the physical beating, and he could not get out of bed. *Id.* at 36 ¶¶ 113–14.  Due to his mental illness and the mistreatment, Plaintiff started to have suicidal thoughts. *Id.* ¶ 115.  He informed Defendants Nurse Dyke, LSCW Winiarz, and Psychologist Gaw of his suicidal ideation but they reported that he was fine. *Id.* ¶¶ 116–17.  Defendant Gaw challenged him to prove that he was suicidal. *Id.* at 37 ¶ 118.  That same day, Plaintiff attempted to commit suicide by swallowing three sharp metal objects. *Id.* ¶ 119.  Plaintiff later had X-rays and was taken to his same segregation cell but was not provided with any mental health evaluation. *Id.* at 38 ¶ 125.

From September 15 through September 28, 2021, Plaintiff explained to Defendants Nurse Dyke and LCSW Winiarz that he had severe abdominal pain and that his X-rays showed objects

lodged in his abdomen.  *Id.* at 39–40 ¶ 134.   However, Defendants Nurse Dyke and LCSW Winiarz failed to provide for Plaintiff to be examined, or evaluated by a hospital or medical facility outside of DOC that was equipped to handle his medical condition.  *Id.*

## II.    PRELIMINARY MATTERS

Before examining whether any of Plaintiff's asserted Eighth or First Amendment claims can proceed past initial review, the Court addresses the availability of the relief sought by Plaintiff against Defendants as well as allegations related to the personal involvement of Defendants.

### A.   Official Capacity Relief

First, as Plaintiff is no longer housed at Osborn, his requests for official capacity relief against Defendants, who are all alleged to be Osborn employees, are moot.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Additionally, any claims based on constitutional violations for money damages against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment, as all Defendants are state employees.  *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).   Thus, the Court considers only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages, and all official capacity claims are dismissed.

### B.   State of Connecticut and DOC

Plaintiff may not proceed against the State of Connecticut of DOC because the state, a state agency, or a division of a state agency is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).   Thus, all claims against the State of Connecticut

DOC are dismissed.

### C.  Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").   This is true with respect to supervisory officials, as well.  *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Plaintiff has not alleged any facts in the body of his amended complaint about conduct by Lieutenant Schold, Lieutenant Schachun, Officer Conteras, Officer Ocasio, Officer Croke, and Officer Floodquist.   All claims asserted against these Defendants are thus dismissed.

### III.   EIGHTH AMENDMENT CLAIMS

As Plaintiff was a sentenced inmate at time relevant to this action, his claims of deliberate indifference and excessive force are reviewed under Eighth Amendment standards.   *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017).

### A.  Conditions of Confinement Claims

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that:   (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . ., such as deliberate indifference to inmate health or safety.'"   *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Gaston v.*

*Coughlin*, 249 F.3d 156, 164 (2d Cir. 2011)) (alterations in original). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health," with their severity being "evaluated in light of contemporary standards of decency." *Id.* As for the subjective prong of the inquiry, "[d]eliberate indifference . . . means the official must 'know of and disregard an excessive risk to inmate health or safety; the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis added).

### 1. *Unsanitary Conditions of Confinement*

The Court previously dismissed Plaintiff's claims based on unsanitary or unhealthy conditions of confinement because he had not alleged facts connecting any particular Defendant sued in this case to the alleged violations. Plaintiff's unsanitary conditions claims in his amended complaint fail for the same reason.

The Court recognizes that Plaintiff has alleged Defendants had supervisory responsibilities to provide for safe and sanitary of confinement. But the Second Circuit has clarified that "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti*, 983 F.3d at 620. The Court concludes that Plaintiff has not alleged sufficient specific facts to reflect that any particular Defendant acted with deliberate indifference to his unsanitary or unhealthful conditions of confinement.

Further, Plaintiff's unsanitary conditions of confinement claims are also misjoined in this

action.   Under the Federal Rules of Civil procedure, joinder of multiple defendants is only permitted in an action if:   "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."   *See* Fed. R. Civ. P. 20(a)(2).   "Rule 21 provides that a court 'may sever any claim against a party.'   The decision whether to sever a claim 'is committed to the sound discretion of the trial court.'"   *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012) (first quoting Fed. R. Civ. P. 21; then quoting *Greystone Cmty. Reinv. Ass'n v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 293 (D. Conn. 2009)) (internal citation omitted).   "Courts consider whether:   (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims."   *Id.*

Plaintiff's unsanitary conditions claims do not come from the same transactions or occurrences as his other claims pertaining to the events on and after September 14, 2021. Although Plaintiff was cleaning the unsanitary conditions in Unit E when officers allegedly found the contraband in his locker in Unit B, that is too tenuous a connection to the events that underlie most of Plaintiff's claims.   Thus, joinder of the unsanitary conditions claims with his claims about the events of September 14, 2021, and beyond is not warranted.   Judicial economy would not be served by trying all of the claims together because different sets of evidence would need to be presented at trial or considered in settlement negotiations.   Thus, if Plaintiff wishes to pursue his § 1983 claims concerning unsanitary or unhealthful conditions of confinement, he must do so in a

separate action.

### 2. *Four-Point Restraints*

A painful or harmful period of restraint can rise to the level of an objectively serious condition of confinement.  *Shand v. Rodriguez*, No. 3:20-cv-1268 (SVN), 2021 WL 5988629, at *6 (D. Conn. Dec. 17, 2021).  At this early stage in the matter, Plaintiff's allegations suffice to support Eighth Amendment claims of deliberate indifference to a risk of harm to Plaintiff's health and well-being.  Thus, Plaintiff may proceed on his Eighth Amendment claims for damages against Captain Chevalier, Lieutenants McClain and Clayton, and Officers Torres, Quinones, Grant, Shires, and Garutti, and Nurse Dyke, who are all plausibly alleged to have acted with deliberate indifference to Plaintiff's painful four-point restraint custody while he was covered with the chemical agent.

### B. Medical Needs Claims

To state an Eighth Amendment claim for deliberate indifference to his medical needs, Plaintiff must allege facts showing that both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain.  *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003).  Subjectively, the defendant must have been "subjectively reckless" by denying the plaintiff medical care.  *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983.  *See Hernandez v. Keane*, 341 F.3d

137, 144 (2d Cir. 2003).   Nor does a disagreement over the treatment provided show deliberate indifference.   *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance*, 143 F.3d at 703).

### 1.   *Exposure to Chemical Agent*

An inmate who suffers significant distress from his chemical agent exposure may raise a plausible Eighth Amendment claim.   *See Deegan v. Doe #1*, No. 3:19-cv-1356 (MPS), 2019 WL 5964816, at *5 (D. Conn. Nov. 13, 2019) (allegation of pain from chemical agent sufficient to constitute serious medical need on initial review).

For initial review purposes, Plaintiff's allegations are sufficient to permit Plaintiff's Eighth Amendment claims for damages to proceed against Captain Chevalier, Lieutenant McClain and LCSW Winiarz for deliberate indifference to the harm caused by Plaintiff's exposure to a chemical agent or for their failure to intervene to prevent the alleged Eighth Amendment violation.   *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (explaining that an officer can be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that any constitutional violation has been committed by a law enforcement official") (cleaned up).

### 2.   *Failure to Decontaminate*

Plaintiff asserts that he continued to suffer the burning effects of the chemical agent exposure after he was improperly decontaminated and not permitted to wash off the chemical agent prior to being placed in four-point restraint custody by Captain Chevalier, Lieutenants McClain and Clayton, and Correction Officers Torres, Quinones, Grant and Garutti.   In addition, Plaintiff indicates that Defendants Nurse Dyke, Lieutenant Clayton, and Officers Shires, Torres, Grant,

Garutti and Quinones laughed at him when he requested relief from the chemical agent effects during his four-point restraint custody.   Thus, Plaintiff may proceed on his claims for damages against Captain Chevalier, Lieutenants McClain and Clayton, Nurse Dyke, and Correction Officers Shires, Torres, Grant, Garutti and Quinones for their indifference to Plaintiff's medical care for the effects of the chemical agent after his improper decontamination.

### 3.   Assault Injuries

Plaintiff claims Lieutenant Clayton and Correctional Officers Ware, Shires and John Doe 1 and 2 failed to provide him with medical care after subjecting him to severe injury.   He alleges that Nurse Dyke later dismissed his assertion of his pain and suffering resulting from the correctional officers' attack.   Although sparse, Plaintiff's allegations plausibly suggest that Lieutenant Clayton, Correctional Officers Ware, Shires and John Doe 1 and 2, and Nurse Dyke acted with a conscious disregard to Plaintiff's medical needs after he was injured from an assault. The Court will permit Plaintiff to proceed on his Eighth Amendment claims against these defendants in their individual capacities for damages.

### 4.   Mental Health

The Eighth Amendment prohibits deliberate indifference to  an  inmate's  serious  mental health needs.   *See Spavone*, 719 F.3d at 138.   Plaintiff alleges facts that plausibly suggest Defendants Chevalier, McClain and Winiarz acted with deliberate indifference to his serious mental disorders by failing to call for further mental health review prior to subjecting him to severe disciplinary measures of multiple chemical agent exposures, high level restraints and four-point custody.

Plaintiff also plausibly alleges that Defendants Dyke, Winiarz and Gaw acted with deliberate indifference to his mental health needs after they became aware that he had swallowed foreign objects.   Thus, the Court will permit Plaintiff to proceed on his claims of Eighth Amendment deliberate indifference to his mental health needs against Defendants Chevalier, McClain, Winiarz, Dyke and Gaw in their individual capacities.

5.   *Objects Lodged in Abdomen*

Plaintiff's allegations indicate that that Nurse Dyke and LCSW Winiarz were aware that he had objects lodged in abdomen but failed to provide him with adequate medical care. These allegations suffice to state a plausible claim that Defendants Dyke and LCSW Winiarz acted with deliberate indifference to his serious medical needs. Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment claims for deliberate indifference to his serious needs for medical treatment against Nurse Dyke and LSCW Winiarz in their individual capacity.

C.   Excessive Force

Plaintiff's amended complaint possibly raises excessive force claims based on the alleged use of a chemical agent and severe restraints and assault. To adequately allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously and sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm.  *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000).

### 1. Chemical Agent

Correctional staff's use of a chemical agent on a "recalcitrant inmate" to force compliance with direct orders is not "malicious and sadistic," but rather a good faith effort to restore order. *See Vazquez v. Spear*, No. 12-cv-6883 (VB), 2014 WL 3887880, at *5 (S.D.N.Y. Aug. 5, 2014) ("[T]he use of single burst of a chemical agent, which is not a dangerous quantity, is not an unacceptable means of controlling an unruly or disruptive inmate."). Construed most favorably, the amended complaint's allegations suggest that the use of the chemical agent went beyond valid penological objectives. Thus, Plaintiff may proceed on Eighth Amendment misuse of force (or failure to intervene) claims for damages against Captain Chevalier, Lieutenant McClain and LCSW Winiarz based on the chemical agent deployment.

### 2. Restraints/Four-Point Custody

The use of restraints does not violate the Eighth Amendment unless it lacks penological justification, is grossly disproportionate, or involves the unnecessary and wanton infliction of pain. *See Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011) (citing *Dixon v. Goord*, 224 F. Supp. 2d 739, 748 (S.D.N.Y. 2002)). Plaintiff's allegations suggest that Defendants applied a harsh use of elevated restraints that was grossly disproportionate to the situation. In addition, Plaintiff alleges that he endured unnecessary suffering because he was placed on four-point restraints while he was burning from the chemical agent. Thus, the Court permits Plaintiff to proceed on Eighth Amendment excessive force (or failure to intervene) claims based on the harsh use of elevated restraints and four-point restraints against Defendants Chevalier, McClain, Clayton, Dyke, Grant, Torres, Garutti, Shire, and Quinones in their individual capacities.

3. *Assault*

Plaintiff alleges that he was "bum-rushed" by Defendants Chevalier, McClain, Clayton, Grant, Garutti, Quinones, and Torres during his shackling and handcuffing; and that he was later "bum-rushed" again by Lieutenant Clayton, and Correction Officers Ware, Shires and John Does 1 and 2. Plaintiff may proceed on this Eighth Amendment excessive force claims against these defendants in their individual capacities.

## IV.  FIRST AMENDMENT RETALIATION

Plaintiff claims that he was falsely "set up" and accused of having unauthorized pills in his cell as retaliation for having embarrassed Officer Stygall.

To plead a First Amendment retaliation claim, an inmate must plausibly allege:  "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official— even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (cleaned up). "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20-cv-1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020).

Plaintiff provides no information about the nature of his comments about Officer Stygall. But district courts within this district have generally held that verbal confrontations or arguments

between a prisoner and correctional staff are not protected speech under the First Amendment. *Cosby v. McDonald*, No. 3:20-cv-432 (MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020) ("Even if verbal complaints/grievances constituted protected speech, district courts have distinguished between verbal grievances and verbal confrontations or arguments between a prisoner and a correctional officer and have concluded that the latter do not constitute protected speech.") (citing cases).   In light this precedent, it is not likely that an inmate's speech to humiliate a correctional officer is protected under the First Amendment.   Furthermore, consistent with the Second Circuit instruction to approach retaliation claims with some measure of skepticism, the Court will not permit Plaintiff to proceed on his claims based upon his wholly conclusory assertion that he was set up as a result of his having embarrassed Officer Stygall.   *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).   Accordingly, to the extent Plaintiff asserts a First Amendment retaliation claim against Officer Stygall, the Court will dismiss such claims as not plausibly alleged.

However, the Court will still permit Plaintiff to proceed on his First Amendment claim against Defendant Clayton for allegedly retaliating against due to his complaints about prison conditions.

## V.    VIOLATION OF DOC DIRECTIVES

To the extent Plaintiff complains of Defendants' failure to comply with the DOC Administrative Directives, Plaintiff does not state a plausible Eighth Amendment violation. "[A]llegations that a prison official violated the procedures set forth" in an Administrative Directive or other policy "do not state a claim of a violation of an inmate's constitutional rights."   *Olivencia v. Pun*, No. 3:21-cv-739 (KAD), 2021 WL 3173137, at *4 (D. Conn. July 27, 2021).

# ORDERS

For the foregoing reasons, the court enters the following orders:

The case shall proceed on Plaintiff's individual capacity claims for damages for:

(1) Eighth Amendment violation against Defendants Chevalier, McClain, Clayton, Dyke, Shires, Torres, Grant, Garutti, and Quinones based on deliberate indifference to Plaintiff's condition of confinement while in four-point restraints;

(2) Eighth Amendment violation against Defendants Chevalier, McClain, and Winiarz (failure to intervene) based on deliberate indifference to the effects of chemical agent exposure on Plaintiff's health;

(3) Eighth Amendment violation against Defendants Chevalier, McClain, Clayton, Dyke, Shires, Torres, Grant, Garutti, and Quinones based on deliberate indifference to Plaintiff's health for failing to adequately decontaminate Plaintiff after the use of a chemical agent;

(4) Eighth Amendment violation against Defendants Clayton, Ware, Shires, John Doe 1 and 2, and Dyke based on deliberate indifference to Plaintiff's health for failing to adequately attend to Plaintiff's medical needs after he was assaulted;

(5) Eighth Amendment violation against Defendants Chevalier, McClain, Winiarz, Dyke and Gaw based on deliberate indifference to Plaintiff's mental health needs;

(6) Eighth Amendment violation against Defendants Dyke and Winiarz based on deliberate indifference to Plaintiff's health for failing to adequately provide treatment to Plaintiff after he swallowed several metal objects;

(7) Eighth Amendment excessive force claim against Defendants Chevalier, McClain, and Winiarz based on unnecessary use of a chemical agent;

(8) Eighth Amendment excessive force claim against Defendants Chevalier, McClain, Clayton, Grant, Torres, Garutti, and Quinones in connection with the elevated use of restraints, including shackling, cuffing and use of the safety veil;

(9) Eighth Amendment excessive force (or failure to intervene) claims against Defendants Chevalier, McClain, Clayton, Dyke, Shires, Grant, Torres, Garutti, and Quinones based on unnecessary use of four-point restraints;

(10) Eighth Amendment excessive force against Chevalier, McClain, Grant, Garutti, Quinones, Torres, Clayton, Ware, Shires, and John Does 1 and 2 for assaulting (or bum-rushing) him;

(11) First Amendment retaliation against Defendant Clayton.

Plaintiff's official capacity claims are DISMISSED.   All other claims are DISMISSED. Defendants DOC, the State of Connecticut, Lieutenant Schold, Lieutenant Schachun, Officer Conteras, Officer Ocasio, Officer Croke, Officer Stygall, and Officer Floodquist are DISMISSED from this action.   Plaintiff's Eighth Amendment claims based on unsanitary conditions of confinement are DISMISSED as not plausibly alleged.   As such claims are also misjoined in this action, Plaintiff must pursue such claims in a separate action.   *See* Fed. R. Civ. P. 20 & 21.

The Court enters the following orders.

(1) The clerk shall verify the current work addresses for Captains Chevalier and McClain, Lieutenant Clayton, Correction Officers Grant, Torres, Quinones, Garutti, Shires, Ware, Nurse Dyke, Social Worker Melissa Winiarz, and Psychologist Gaw with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint to them at their confirmed addresses by **December 5, 2023**, and report on the status of the waiver

request on the thirty-fifth (35th) day after mailing.  If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Clerk cannot effect service on a Doe defendant without that defendant's full name and current work address.  Within 90 days of the appearance of counsel for any defendant, Plaintiff shall serve a discovery request on the appearing defendant to identify Defendants Doe 1 and Doe 2.  Plaintiff shall provide the names of those defendants to the Court within 14 days of receiving them from counsel for a defendant.  Once a defendant Doe has been identified, the Court will order that he or she be served with a copy of the amended complaint.  Failure to identify a Doe defendant by **May 22, 2024,** will result in the dismissal of all claims against that defendant.

**Change of Address**. If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the court.   Failure to do so can result in the dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.   It is not enough to just put the new address on a letter without indicating that it is a new address.   If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.   Plaintiff should also notify Defendants or counsel for Defendants of his new address, if Defendants have appeared through counsel.

***

The Court will issue a schedule for this case once service is effected upon Defendants.

**SO ORDERED** at Hartford, Connecticut, this 22nd day of November, 2023.

_/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE